MRS. A. S. ABELL *v.* THE PROPRIETORS OF THE GREEN MOUNT CEMETERY, ET AL.

[No. 43, October Term, 1947.]

Decided December 11, 1947.

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Thomas G. Andrew* for the appellant.

*Randolph Barton, Jr.,* and *William B. Kempton* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

On July 29, 1914, the appellant purchased from appellees a lot in Green Mount Cemetery and received therefor a certificate of ownership which conveyed the lot to her, her heirs and assigns forever "for the purpose of sepulture only and for no other use or purpose whatever * * * and subject also to the conditions and limita-

tions and with the privileges hereinafter set forth."
One of these conditions was as follows:

"All enclosures, monuments, or other structures upon
the said Lot shall be of such design as may be approved
by the Officers of the said Corporation, and shall be so
placed as not to encroach upon any other lot or upon any
avenue or path of the Cemetery; and the said Corpora-
tion reserves the right at any time to remove or have
removed any enclosure, monument, or other structure
whatever, or any inscription, which its President and
Manager may deem improper or detrimental."

In this lot were buried the husband, two grandsons
and the son of the appellant. She owned four sculptured
lions purchased in Italy about 80 years ago, two of which
she had placed on the steps of her residence in Balti-
more. The other two she had in storage. Some time
in the year 1940 she requested permission of the appel-
lees to place two of these lions on her cemetery lot. It
appears from the bill of complaint herein that the lion
has been identified with her husband's family for more
than four generations, and has been used as insignia
to identify their property. The manager of the ceme-
tery, Mr. Dove, brought up the matter through the Presi-
dent of appellee, General Lawrason Riggs, at a meeting
of the Board of Directors, and as a result he was in-
structed by General Riggs to write Mrs. Abell that the
lions could be placed as she desired, provided she de-
posited with the Company $400 to give her lot a limited
perpetual care. Mrs. Abell did not reply to this letter,
nor did she accept the proposition.

In December 1945, Mr. Dove was advised by certain
dealers in stone work that they had been asked by the
appellant to install the lions on her lot, and they wished
to get permission from the Board to do so. Mr. Dove
immediately brought the matter to the attention of the
Board, and the latter, after due consideration, decided
unanimously that the installation of the lions would be
inappropriate and that they would not be allowed to
be placed on the appellant's lot. After some further

discussion by the parties and their attorneys, the appellant filed a bill of complaint in the Circuit Court No. 2 of Baltimore City, asking that the Proprietors of the Green Mount Cemetery, their officers, agents and employees be enjoined from preventing her from placing her two lions on her lot. An answer was filed to this bill, testimony was taken, and the Chancellor entered a decree dismissing the bill of complaint. From that decree, comes this appeal.

Appellant contends that the limitation contained in her certificate of ownership is too vague and indefinite to be enforced. She notes the absence of standards by which the management is to be guided. But the contracts and agreements of a cemetery company (a private corporation) are to be construed in the light of the circumstances surrounding their making and the subject matter involved. A place for the burial of the dead has characteristics differing from those of an ordinary tract of land. To many it is sacred ground which should not suffer intrusion from mundane objects. The authorities in charge must consider not only the desires of individual lot owners to remember their dead. They have also to consider the sensibilities and feelings of other lot owners who may have different ideas of the appropriateness of proposed monuments and structures. Obviously they must have some authority to forbid those which are clearly unseemly and improper. Just as obviously, this authority must not be unlimited and autocratic. Except as to shape and size it is impractical to frame a restriction or limitation which is specific and definite. There may be thousands of different styles of stones, monuments, mausoleums, vaults and statues which bereaved relatives may wish to erect in memory of those who have passed away. Certain types of cemeteries require uniformity in style, height and shape of stones or markers. But the ordinary burial ground makes no such condition. As to it there is no way to cover all cases, unless general authority is conferred upon the management to pass upon the nature and character of

proposed structures. Such is the limitation frequently found in deeds or certificates for cemetery lots, and such is the limitation in the one before us in this case.

The appellant in furtherance of her position shows that Section 176 of Article 23 of the Code provides that the estate of the owner in a burial lot in a cemetery is real estate, that the Act of 1837, Chapter 164, incorporating the Proprietors of the Green Mount Cemetery declares a lot in that cemetery to be real estate, and that the case of *Silverwood v. Latrobe,* 68 Md. 620, 13 A. 161, states that the grantee of such a lot has a qualified fee limited to the purpose of sepulture. She therefore claims that restrictions on the use of such lots should be treated in the same manner as ordinary restrictions on the use of land and should be held invalid. It is true that restrictions on the free use of land are not favored by the law, and are strictly construed against the grantor. *McKenrick v. Savings Bank,* 174 Md. 118, 197 A. 580; *Whitmarsh v. Richmond,* 179 Md. 523, 20 A. 2d 161; *Yorkway Apartments v. Dundalk Co.,* 180 Md. 647, 26 A. 2d 398. But this principle of construction is based upon the public policy that it is for the benefit of the community generally that there should be a free and unencumbered right in an owner to use or transfer land. Lots in a cemetery are not supposed to be purchased for purposes of transfer, although in some cases in recent years they have been used for speculative purposes. In such cases a different rule has been applied to them with respect to execution and taxation. *Burdette v. Jackson,* 4 Cir., 179 F. 229. Section 176 of Article 23, above referred to and cited by appellant, illustrates the difference by a provision that lots may be disposed of by the owner by sale "with the approval of the President and Managers of the Cemetery." Such lots are thus made a striking exception to the general rule of free transfer. Places of burial are not for barter and sale. They are expected to remain in the possession of the family of those purchasing them and it is a fact of which we may take judicial notice that they frequently

do for generations. To apply to restrictions on such lots the usual rules would be to invoke against such restrictions a doctrine, the foundation of which is directly contrary to the theory on which such lots are sold.

In the application of restrictions or in the framing and enforcement of rules and regulations adopted in pursuance of reserved power, certain factors, however, must be borne in mind. A cemetery management cannot undertake to pass upon the artistic merit of a proposed structure. It is, ordinarily, hardly qualified in this respect, but, in any event, individual lot owners are entitled to their own taste, provided it does not offend common sensibilities. And the enforcement of restrictions or rules and regulations must be carried out with uniformity. They cannot be applied to one individual and waived as to another. *Chariton Cemetery Co. v. Chariton Granite Works,* 197 Iowa 403, 197, N. W. 457, 32 A. L. R. 1402; *Zimmer v. Congregation Beth Israel,* 203 Cal. 203, 263 P. 232. Nor, in the absence of a specific agreement to that effect, can the management require regularity of form and design of monuments. *Johnson v. Cedar Memorial Park Cemetery Ass'n,* 229 Iowa 749, 295 N. W. 136, second appeal 233 Iowa 427, 9 N. W. 2d 385; *Tonella v. Fishkill Rural Cemetery,* 135 Misc. 81, 236 N. Y. S. 663, affirmed 229 App. Div. 732, 241 N. Y. S. 851. Nor special location on a lot unless by definite and uniform regulation. *Pitcairn v. Homewood Cemetery,* 229 Pa. 18, 77 A. 1105; *Rosehill Cemetery v. Hopkinson,* 114 Ill. 209, 29 N. E. 685. The power to decide concerns the unusual or the bizarre, the kind of structure which might be regarded as detrimental and improper by those who had buried their dead in adjoining and surrounding lots. Such a decision must be left to those in charge of the cemetery, not to individual lot owners. Nor have courts the right to review and override, except where the action is arbitrary or the result clearly unreasonable.

It is not difficult to find these principles expressed in general words in the cases. But each case is distinguish-

able on its facts, and the results vary. Thus in *Tonella v. Fishkill Rural Cemetery, supra,* the cemetery authorities were enjoined from refusing permission to a lot owner to erect a vault which the authorities (but not the Court) thought would be mistaken for a comfort station. But in *St. Peter's Evangelical Lutheran Church v. Bean,* 15 Pa. Dist. R. 636, the authorities were upheld in their refusal to permit the erection of a memorial stone to a dead dog buried in his master's lot, although the dog's body was no longer there.

The use of the reservation to refuse permission to appellant to place her lions in the cemetery is, in the opinion of the court, neither arbitrary nor unreasonable. The artistic beauty of the statues or their value was not in question. Assuming for the purpose of the discussion that they are objects of art of great charm and worth, their admission might open the way for the erection of all kinds of animal reproductions, good or bad, valuable or worthless, beautiful or hideous. The Directors decided against the lions, and by so doing protected the cemetery from other and perhaps less desirable figures. We cannot say that this action was not reasonable, nor was it in excess of their powers under the reservation in the certificate of ownership. To that extent only is such action reviewable here.

The appellant further contends that by permitting other lot owners to place statuary animals on their lots and by placing statuary owls on their own mausoleum, the appellees have barred themselves from asserting that statuary animals are in violation of the restriction. An examination of the record shows that the only animals in the cemetery are those placed there many years ago in remote and inconspicuous locations. They consist of two small dogs on foot stones, one cat, one eagle on a vault and several lambs on babies' foot stones. It is difficult to perceive that the owls on the mausoleum are in fact owls. Certainly they are in no sense comparable with the lions of the appellant. Nor do we think the other small and inconspicuous animals, already in the

cemetery, establish any precedent for the appellant. It does not appear that any question was ever raised as to the placing of any of these animals, and their small number in a cemetery as large as Green Mount does not give any right to the appellant to override the decision of the present board of directors.

The appellant also contends that appellees waived their right to object to the lions because in 1940 they gave permission to the appellant to put the lions on her lot provided she purchased perpetual care. The evidence indicates that there was then no serious consideration given to the matter, that the permission was conditional and was apparently due to the desire of the board at that time to have the appellant's lot kept in better repair. The Directors may have thought that the lot properly kept up with the lions on it was less objectionable than the lot without the lions, but unkempt and uncared for. However that may be, the offer was not accepted and there is no basis for holding that the appellees are barred in any way by making it. Had the offer been accepted, the money paid, and the lions placed upon the lot, a different situation might arise. The decision in 1945 was made without consideration of the question of perpetual care.

As we find no error in the ruling of the learned Chancellor below, the decree will be affirmed.

*Decree affirmed, with costs.*