**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2268**

PAMELA ONUSKO,

             Plaintiff - Appellant,

      v.

JP MORGAN CHASE BANK, N.A.,

             Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Benson Everett Legg, District Judge.
(1:09-cv-01080-BEL)

Submitted:  November 29, 2012          Decided:  February 7, 2013

Before WILKINSON, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jan I. Berlage, GOHN, HANKEY & STICHEL, LLP, Baltimore,
Maryland, for Appellant.  William G. Miossi, Mary M. Lenahan,
WINSTON & STRAWN LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pamela Onusko ("Onusko") appeals the district court's grant of summary judgment to JP Morgan Chase Bank, N.A. ("Chase"), on several claims arising from her former employment with Chase. For the reasons set forth within, we affirm the judgment of the district court.

I.

Onusko alleges that Chase enticed her away from her then-current employer, Wells Fargo National Bank, N.A. ("Wells Fargo"), with promises that Chase was growing its subprime mortgage division and would hire, promote, and provide Onusko and her sales team with the necessary resources for her to be financially successful. Ultimately, Onusko contends Chase reneged on these promises to her and, as a consequence, owes her damages on the basis of several causes of action.

Until March 2007, Onusko was employed by Wells Fargo as a subprime mortgage division manager, where she headed a team of 350 employees responsible for over one billion dollars in sales. In the spring of 2006, Jim McCraw ("McCraw"), a former Wells Fargo employee who had left for Chase, began to actively recruit Onusko to come work for Chase. Chase formally offered Onusko a position in August 2006. The offer letter discussed the terms of employment, benefits, and the orientation process, but was

2

silent as to the transfer or hiring of Onusko's sales team. The letter contained an integration clause which read: "This letter contains the entire understanding between us and supercedes [sic] any prior verbal or written communication related to terms and conditions of this offer of employment." (J.A. 728.) Onusko rejected the offer, explaining that she was not ready to move and that Chase had offered her less than her current compensation at Wells Fargo.

Chase sent Onusko a second offer letter in September 2006. Like the previous offer letter, the September 2006 offer letter made no mention of a sales team and concluded with an integration clause. Onusko rejected the offer.

From October 2006 through mid-March of 2007, the parties had no formal dealings. Onusko and McCraw, however, occasionally spoke by telephone.[1] Though Chase made no formal offers of employment, Onusko maintains that "general discussion" about the possibility of her leaving Wells Fargo continued. (J.A. 562–63.)

---

[1] When asked about the purpose of the telephone conversations, Onusko responded: "We were friends. We had been friends for many years. So, you have that networking. That's a common thing among businesspeople, and just what's going on, just general discussion, how are you doing, how is life, how are things, miscellaneous conversations with miscellaneous people." (J.A. 562.)

On March 15, 2007, Onusko received the unexpected news that Wells Fargo was exiting the subprime sector and, as a result, eliminating her position. She was offered a different position in Wells Fargo's traditional mortgage division with a similar compensation structure. After considering the offer for "two seconds," she immediately informed her manager that she would be leaving Wells Fargo to work for Chase. (J.A. 511.)

Later that day, Onusko telephoned McCraw and informed him that she was now ready to join Chase. McCraw responded that he would need some time to "see what we can put together." (J.A. 514.) Chase made Onusko a formal offer in April 2007. The position it had previously offered was not immediately available, but Chase proposed to make Onusko a regional manager, with the assurance that she would be promoted to divisional manager within a few months.

The April 2007 offer letter, like Chase's previous offer letters, made no mention of a sales team and contained an integration clause. Onusko, nevertheless, contends that Chase "reassured her that as [r]egional [m]anager [ ] she would have absolutely the same ability to hire members of her sales team from Wells Fargo." (J.A. 17.) She concedes, however, that she accepted the April 2007 offer letter as written and did not attempt to negotiate any of its terms. She also concedes that

4

the parties never discussed specifics, such as a budget or the number of people that she would be permitted to hire.

Less than a month after Onusko had commenced her employment with Chase, the bank instituted what it characterized as a temporary hiring "pause."[2]  In October 2007, Onusko was promoted to divisional manager as promised, but was unable to hire and grow the team on which her compensation largely depended.  At some point in late 2007 or early 2008, as the subprime mortgage market began to disintegrate, it became clear that the hiring pause was unlikely to be lifted.

In early 2008, Chase eliminated Onusko's divisional manager position and made her an area manager, a lesser title which she held for approximately four months.  In August 2008, as Chase underwent another reduction in its work force, it demoted Onusko again, this time to loan officer.  Onusko formally resigned from Chase in November 2008.

In April 2009, Onusko filed her Complaint against Chase in the District of Maryland, alleging fraudulent misrepresentation, negligent misrepresentation, and deceit.  Chase moved for summary judgment, which the district court granted.

---

[2] The parties dispute whether "pause" or "freeze" is the proper term for Chase's cessation of hiring, and of what, if any, difference in meaning exists between the two.  The district court, quite appropriately, saw no distinction and used the terms interchangeably.

5

Onusko timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. See Nat'l City Bank of Ind. v. Turnbaugh, 463 F.3d 325, 329 (4th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Additionally, we apply Maryland law because this action is based upon diversity jurisdiction. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496–97 (1941) (federal court exercising diversity jurisdiction must apply legal principles of the state in which the federal court is located).

## III.

Onusko contends on appeal that the district court erred in three ways: (1) treating her deceit claim as a fraudulent misrepresentation claim, rather than as a fraudulent concealment claim; (2) failing to thoroughly consider key evidence and facts; and (3) failing to view the facts in the light most

favorable to her as to when Chase knew or should have known a hiring freeze was imminent.

We conclude that the district court did not err in treating Onusko's deceit claim as a fraudulent misrepresentation claim, rather than as a fraudulent concealment claim. Maryland law makes clear that "the common law causes of action for fraudulent misrepresentation and fraudulent concealment are substantively indistinct." Rhee v. Highland Dev. Corp., 958 A.2d 385, 396 (Md. Ct. Spec. App. 2008); see also Hoffman v. Stamper, 867 A.2d 276, 292 n.12 (Md. 2005) ("It has long been clear that fraud may consist in a suppression of the truth as well as in the assertion of a falsehood." (quotation marks and brackets omitted)). Onusko has failed to demonstrate a prime facie case of either fraudulent misrepresentation or fraudulent concealment. See Miller v. Fairchild Indus., Inc., 629 A.2d 1293, 1301–02 (Md. Ct. Spec. App. 1993) (stating elements of prima facie case of fraudulent misrepresentation or deceit). Onusko cannot show that there was either an affirmative misrepresentation or a material non-disclosure made by Chase.

Turning to Onusko's next contention, we conclude that the district court did not err in failing to consider key evidence and facts. The district court thoroughly evaluated the record to determine that there were no genuine issues of material fact as to whether McCraw used fraudulent misrepresentations or

7

concealments to entice Onusko to join Chase. The record shows that any conversations Onusko and McCraw had between September 2006 and March 15, 2007, were, as Onusko characterized, "just general conversation . . . month in and month out." (J.A. 563.) The record further reflects that in the three-month period preceding Onusko's March 15, 2007 phone call to McCraw soliciting employment from Chase, there were no other conversations between her and McCraw. Onusko concedes that Chase made no employment proposals to her between September 2006 and April 5, 2007, the later date being well after March 15, 2007, when her position at Wells Fargo was eliminated. Given the evidence, the district court correctly assessed Onusko's failure to produce material evidence from which a jury could find in her favor on the three claims alleged.

Finally, we conclude that the district court did not err in failing to view the facts in the light most favorable to Onusko as to when Chase knew or should have known a hiring freeze was imminent. Nothing in the record supports Onusko's allegation that Chase intended to institute a permanent hiring freeze after her arrival.

IV.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal

8

contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

<u>AFFIRMED</u>

9