[No. A063983. First Dist., Div. Two. Jan. 13, 1995.]

GERALD GEERNAERT et al., Plaintiffs and Appellants, v.
ROBERT J. MITCHELL et al., Defendants and Respondents.

602

COUNSEL

Hooy & Hooy and William J. Hooy for Plaintiffs and Appellants.

John S. Warnlof and Gordon A. Berke for Defendants and Respondents.

OPINION

SMITH, J.—Plaintiffs Gerald Geernaert and his wife Pamela Geernaert brought this action for damages against two defendants who formerly owned their residence, alleging fraudulent misrepresentation and concealment regarding significant structural and foundation problems with the property. The trial court dismissed the case after determining, on a demurrer, that defendants owed no duty to plaintiffs which would subject them to liability.

We will conclude that the lower court's ruling is inconsistent with the Restatement Second of Torts section 533 and subsequent California cases that have followed it, and will therefore reverse the judgment.

### BACKGROUND

This appeal, from a judgment of the superior court after it sustained defendants' demurrer without leave to amend, presents us with a pure question of law. (*Mirkin* v. *Wasserman* (1993) 5 Cal.4th 1082, 1087 [23 Cal.Rptr.2d 101, 858 P.2d 568].) We summarize the allegations of the complaint, mindful that we must assume their truth for the purpose of determining whether a cause of action has been stated. (*Garcia* v. *Superior Court* (1990) 50 Cal.3d 728, 732 [268 Cal.Rptr. 779, 789 P.2d 960].)

Plaintiffs are the owners of a single-family home in Walnut Creek. Defendant Robert J. Mitchell owned the property from May 1978 until October 1982, when he sold it to defendant Mildo Construction, Inc. (Mildo) of whom Milton Perlow and George Furtado were owners and directors.[1] In November 1983, Mildo/Perlow sold the house to defendant Cynthia Payne. Plaintiffs purchased the home from Payne, who is not a party to this appeal, in July 1984.

---

[1]Furtado did not appear, but was dismissed after the filing of a stipulation that he was sued in the same capacity as Perlow. Mildo, a now dissolved corporation, Furtado and Perlow are collectively referred herein to as Mildo/Perlow.

In 1991 a soil engineering report disclosed that the house was built on unconsolidated fill, that substantial soil subsidence had occurred, and that perimeter piers and metal jacks had been installed underneath the house to support the foundation. These repairs had failed to stabilize the house—the south side of the foundation was bowed out several inches, was cracked and tilted outward at the top.

Plaintiffs allege that when Mitchell sold the house in 1982 he falsely and fraudulently represented to prospective purchasers that (a) the foundation was supported by jacks, which was normal for the area, (b) there were no foundation problems, (c) the residence was sound, and (d) all modifications were done to code. In fact Mitchell, who had substantial expertise and background in construction, had experienced soil subsidence problems and had installed perimeter piers and metal jacks to prevent further settlement (which was not a normal method of supporting foundations in the area). Mitchell also knew that his modifications were not performed to code and that the residence was not "sound."

It is further alleged that Mitchell made the foregoing misrepresentations of fact to and concealed the true facts from Mildo/Perlow when he sold the house to them with the intent of inducing them to purchase it; that Mitchell intended or had reason to expect that the misrepresentations and half-truths would be repeated to subsequent purchasers of the residence who would rely on them; and that they were in fact passed on from Mildo/Perlow to Payne and from Payne to plaintiffs in order to induce them to buy the house.

As an alternate theory of recovery, plaintiffs allege that Mitchell did disclose the foundation problems to Mildo/Perlow, who then concealed the true facts and made the aforesaid misrepresentations to Payne with the intent of inducing her to buy the house; that Mildo/Perlow intended or had reason to expect that these misrepresentations and/or concealments would be passed on by Payne to subsequent purchasers such as plaintiffs, and that plaintiffs did in fact rely on the repetition of the false statements and concealments to their detriment.[2]

Mitchell and Mildo/Perlow each filed general demurrers to the complaint. The trial court sustained the demurrers without leave to amend on the ground that these defendants made no statements to nor withheld information from plaintiffs; that any statements or concealments were not relied on by plaintiffs; and that plaintiffs were not a class of persons that the demurring defendants intended to deceive.

---

[2]Plaintiffs explain that Mitchell, in deposition testimony, had contradicted what Mildo/Perlow had told them and stated that in fact he had disclosed "everything he knew" about soil and foundation problems to Mildo/Perlow. Thus, "[p]laintiffs are uncertain as to whom to believe on this issue . . . and make [these] further allegations against [Mildo/Perlow] under the assumption that ROBERT J. MITCHELL's testimony will be found credible."

APPEAL

I

■ It has traditionally been the law in this state that to be liable for actionable fraud the defendant must intend his representation (or concealment) be relied upon by a particular person or persons. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 707, p. 807.) However, it is also recognized that the defendant will not escape liability if he makes a misrepresentation to one person *intending* that it be repeated and acted upon by the plaintiff. (See *Simone* v. *McKee* (1956) 142 Cal.App.2d 307, 313-314 [298 P.2d 667]; *American T. Co.* v. *California etc. Ins. Co.* (1940) 15 Cal.2d 42, 67 [98 P.2d 497].) Likewise, if defendant makes the representation to a particular class of persons, he is deemed to have deceived everyone in that class. (5 Witkin, *op. cit. supra,* § 708, at p. 808.)

■ In this case the trial court's ruling appears to be based on *Cohen* v. *Citizens Nat. Trust etc. Bank* (1956) 143 Cal.App.2d 480 [300 P.2d 14] (*Cohen*). In *Cohen,* the owner of an apartment building, Acker, unlawfully constructed basement apartments without a permit and sold the building to Dunitz without disclosing this fact. Dunitz, in ignorance of the true facts, turned around and sold the building to the plaintiffs. The court held that the plaintiffs stated no cause of action against Acker because (1) Acker had no dealings with the plaintiffs and (2) he could not have "intended" his nondisclosure to be relied on by them because he was unaware of their existence at the time he sold the building to Dunitz. (*Id.,* at p. 485.) In the words of the *Cohen* court: "What interest could Acker have had in subsequent vendees? He made his profit when he sold the property and parted title therewith. Reliance or lack of reliance by a subsequent grantee could not have interested him. Neither the law of this state nor authority from other jurisdictions suggests relief to a subsequent grantee of property upon the latter's complaint that a fraud had been perpetrated by defendant upon one such grantee's predecessors in title. [Citations.]" (*Ibid.,* accord, *Bell* v. *Renaldo* (1975) 51 Cal.App.3d 779, 781-782 [124 Cal.Rptr. 233].)

■ Some 20 years after *Cohen,* section 533 of the Restatement Second of Torts (section 533) was published by the American Law Institute (ALI). It states, "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, *although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other,* and that it will influence

his conduct in the transaction or type of transaction involved." (Italics added.)

Clearly *Cohen* would not have been decided the same way under section 533. Although he could not have *intended* unknown third parties to rely on his fraudulent concealment, a jury might conclude that Acker had *reason to expect* that the person on whom he perpetrated the fraud would resell the illegal apartments to the buyer who would then discover their existence. A duty to plaintiffs could therefore attach even though Acker did not know of their existence at the time he sold the building. (See *Crystal Pier Amusement Co.* v. *Cannan* (1933) 219 Cal. 184 [25 P.2d 839, 91 A.L.R. 1357] [defendants who made misrepresentations to officers of a corporation could be sued by a corporation subsequently formed by the same individuals even though it did not exist at the time of the fraud].)

The rule stated in section 533 has been accepted by post-*Cohen* California cases involving indirect deception. In *Varwig* v. *Anderson-Behel Porsche/ Audi, Inc.* (1977) 74 Cal.App.3d 578 [141 Cal.Rptr. 539] (*Varwig*), plaintiff purchased a Chevrolet from a wholesaler who claimed to have clear title. The wholesaler acquired it from defendant car dealer who had misrepresented the state of title. When the car was repossessed, the plaintiff sued the car dealer for fraud. The dealer moved for summary judgment on the ground that he had no dealings with the plaintiff. The Court of Appeal reversed. Citing section 533, the *Varwig* court noted that the car dealer was on notice that the wholesaler intended to sell the car to the consuming public and thus his representation regarding title was "in law an indirect misrepresentation to plaintiff, who purchased the car in reliance upon [the wholesaler's] repetition of the representation." The court repudiated *Cohen*'s holding as "unacceptably broad" in light of modern trends. (74 Cal.App.3d at pp. 581-582.)

Liability under section 533 was further extended by this division in *Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171 [183 Cal.Rptr. 881] (*Barnhouse*). There, a developer of tract housing failed to disclose to the initial purchaser of a house in the subdivision the existence of seeps, springs and slides near the property as well as inadequate repair of prior slide damage. (*Id.*, at p. 189.) Plaintiff bought the house several years later from the initial purchaser. Citing section 533 and rejecting the reasoning of *Cohen*, *Barnhouse* held that the plaintiff could sustain an action against the developer. After noting that an action for deceit does not require privity of contract (*Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 736 [29 Cal.Rptr. 201, 8 A.L.R.3d 537]), Justice Grodin, writing for the court, stated: "Here, the jury could have inferred that [the developer] failed to make the initial

disclosures with the intention that subsequent purchasers would also act in ignorance. [Citation.] It was *foreseeable* that in a development of relatively inexpensive suburban tract homes, some would change hands. . . . [¶] . . . [¶] We find no difficulty in extending the law of deceit to the situation presented here. Although a developer does not know that there will be subpurchasers, it is *foreseeable* that there will be and that they will be the ones to suffer damage. The developer has every *reason to expect* that if there are subpurchasers, a nondisclosure about subsurface soil conditions will be passed on to them." The opinion concludes that ". . . it would be anomalous if liability for damages resulting from fraudulent concealment were to vanish simply because of the fortuitous event of an intervening resale." (133 Cal.App.3d at pp. 192-193, italics added; see also *Newhall Land & Farming Co.* v. *Superior Court* (1993) 19 Cal.App.4th 334, 351 [23 Cal.Rptr.2d 377] [applying *Barnhouse* to sustain an action by property owner for negligent nondisclosure of soil contamination despite intervening resale].)

While we believe the result in *Barnhouse* is sound, its uncritical equation of "foreseeability" with "reason to expect" as that term is used in section 533, is unfortunate. In its comments under the more general section 531, the ALI carefully distinguishes the concept of foreseeability with "reason to expect," making clear that the latter term bears more similarity to actual *intent* to cause third party reliance than it does to "foreseeability." "Virtually any misrepresentation is capable of being transmitted or repeated to third persons, and if sufficiently convincing may create an obvious risk that they may act in reliance upon it. . . . *This risk is not enough for the liability covered in this Section. The maker of the misrepresentation must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach those persons and will influence their conduct.*" (Rest.2d Torts, *supra*, § 531, com. d, at p. 68, italics added.) This is in accord with the holdings of other state and federal courts, which "have not gone so far as to extend protection to a plaintiff whose reliance on a fraudulent statement was merely within the foresight of reasonable people . . . ." (2 Harper et al., The Law of Torts (2d ed. 1986) § 7.2, p. 387, fn. omitted.)

In *Barnhouse* and *Varwig* the defendants were commercial sellers whose knowledge that the recipient of their deception would pass it on to subpurchasers was fairly apparent. In private real estate transactions "reason to expect" becomes more difficult to establish. As the ALI comment points out, "[t]here must be something in the situation *known to the maker* [of the misrepresentation] that would lead a reasonable man to govern his conduct on the assumption that this [transmission to a third party] will occur."

(Rest.2d Torts, *supra*, § 531, com. d, at pp. 67-68, italics added.) This would cover cases in which the perpetrator of the fraud actually intends third party transmissions (*American T. Co* v. *California etc. Ins. Co., supra*, 15 Cal.2d 42, 67; *Massei* v. *Lettunich* (1967) 248 Cal.App.2d 68, 73 [56 Cal.Rptr. 232]; *Harold* v. *Pugh* (1959) 174 Cal.App.2d 603, 608-609 [345 P.2d 112]; see also BAJI No. 12.50) as well as those in which it may be inferred from the circumstances that the defendant *knew* the injured party would rely thereon. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 488 [275 P.2d 15]; *Nathanson* v. *Murphy* (1955) 132 Cal.App.2d 363, 368 [282 P.2d 174]; *Hunter* v. *McKenzie* (1925) 197 Cal. 176, 184-185 [239 P. 1090].)

In the present context, whether a seller of real property had "reason to expect" transmission to the plaintiff depends upon (1) the extent of the seller's knowledge of resale to a particular person or class of persons and (2) the likelihood that the particular misrepresentation (or concealment) would be passed on to them. A seller's liability under this standard becomes more problematic and difficult to establish with each intervening resale and with each passing year between the occurrence of the original fraud and the lawsuit. Consistent with the rule requiring specificity in pleading fraud (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 216-217 [197 Cal.Rptr. 783, 673 P.2d 660]), a complaint must state ultimate facts showing that the defendant intended or had reason to expect reliance by the plaintiff or the class of persons of which he is a member.

■ In the complaint at bar, plaintiffs have stated facts that would support causes of action for fraud and concealment under section 533. It is alleged that each defendant either misrepresented or failed to disclose known material facts regarding soil subsidence and structural problems with the house when selling it to his purchaser, and that each defendant either intended or expected that the misrepresentations would be repeated and/or the nondisclosures be transmitted to plaintiffs. Mildo/Perlow, a corporation which quickly turned around and sold the house presumably for commercial gain, had special reason to expect the fraud to be transmitted to someone like plaintiffs, who purchased it less than a year after its sale to Payne. Although Mitchell was two sales removed from plaintiffs, it is alleged that he used his construction expertise to take extraordinary measures to conceal the true condition of the property and therefore knew there was a strong likelihood that the deception would be passed on to a subsequent buyer.

It should be emphasized that this case reaches us after the sustaining of a demurrer. Plaintiffs must still convince a trier of fact that each defendant not

only defrauded his purchaser but intended or had reason to expect that the fraud would be transmitted to them. Since a demurrer only tests the sufficiency of the pleading, we may not consider such possible difficulties of proof here. Nonetheless, lack of privity by itself should not defeat plaintiffs' right to recover.[3]

We also do not mean to imply that a seller's liability for indirect fraud may not be resolved by demurrer or summary judgment. Those who are without guilty knowledge or who had no reason to expect reliance by the plaintiffs will still be entitled to expeditious relief upon a proper showing.

## II

Mitchell challenges the misrepresentation cause of action against him on a separate ground. He asserts that while the complaint alleges that Mitchell uttered several specific false statements and half-truths about the property to Mildo/Perlow, it is not alleged that Payne repeated the same statements to them, but only that she "denied knowledge" of structural problems.

Mitchell is incorrect. Plaintiffs affirmatively allege that Mitchell's misrepresentations to Mildo/Perlow, were repeated by Payne to plaintiffs. Although later in the complaint plaintiffs are less than clear about what Payne actually misrepresented to them, at best this created an uncertainty or ambiguity in the pleadings, reachable only by special demurrer. (Code Civ. Proc., § 430.10, subd. (f); 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 924, p. 361.) Since Mitchell failed to specially demur to the complaint, this alleged defect is not cognizable on appeal.

---

[3]Defendants cite BAJI No. 12.50 (1989 rev.) as supportive of their position. The instruction states, in relevant part: "The [representation] [promise] must have been made with the intent to induce some particular person or persons to act in reliance upon it and the party making the [representation] [promise] is liable only to these persons to whom the [representation] [promise] was made with such intent. *If others become aware of the [representation] [promise] and act upon it, there is no liability even though the party who made the [representation] [promise] should reasonably have foreseen such a possibility.*

"A [representation][promise] does not have to be made directly to the person who is intended to act upon it, but may be made to a third person *with the intention that it shall be communicated to the person who is intended to act* upon it." (Italics added, some original brackets omitted.)

To the extent that the BAJI instruction tells the jury that one must *intend* for his fraud to be transmitted to third persons to incur liability to them, it is out of step with section 533 and current California law. As indicated, if the defendant *"has reason to expect"* that his material misstatements or nondisclosures would be passed on to and relied upon by the plaintiffs, he is liable to them.

## DISPOSITION

The judgments appealed from are reversed with directions to the trial court to enter a new order overruling the demurrers.

Kline, P. J., and Phelan, J., concurred.

A petition for a rehearing was denied February 2, 1995, and respondents' petitions for review by the Supreme Court were denied April 13, 1995.