**2021 WI App 56**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2020AP225

†Petition for Review filed

Complete Title of Case

LOUIS PAGOUDIS, HANNA PAGOUDIS, SEAD PROPERTIES, LLC AND
KEARNS MANAGEMENT, LLC,

      PLAINTIFFS-APPELLANTS,

    V.

MARCUS KEIDL AND RUSSELL K. BERG D/B/A INTERVEST
INSPECTIONS,

      DEFENDANTS,

AMY KEIDL A/K/A AMY JO WEYKER,

      DEFENDANT-RESPONDENT.†

| | |
|---|---|
| Opinion Filed: | July 14, 2021 |
| Submitted on Briefs: | September 10, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Davis, J. |
|     Concurred: | |
|     Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas L. Frenn* of *Frenn Law Offices*, Wauwatosa, and *James R. Shaw* of *James Shaw Law*, Brookfield. |

Respondent
ATTORNEYS:     On behalf of the defendant-respondent, the cause was submitted on the brief of *Laura E. O'Gorman* of Schloemer Law Firm, S.C. of West Bend.

| | |
|---|---|
| **COURT OF APPEALS**<br>**DECISION**<br>**DATED AND FILED**<br><br>**July 14, 2021**<br><br>Sheila T. Reiff<br>Clerk of Court of Appeals | **NOTICE**<br><br>This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.<br><br>A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62. |

**Appeal No.    2020AP225**

Cir. Ct. No. 2019CV492

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

---

LOUIS PAGOUDIS, HANNA PAGOUDIS, SEAD PROPERTIES, LLC AND KEARNS MANAGEMENT, LLC,

    PLAINTIFFS-APPELLANTS,

  V.

MARCUS KEIDL AND RUSSELL K. BERG D/B/A INTERVEST INSPECTIONS,

    DEFENDANTS,

AMY KEIDL A/K/A AMY JO WEYKER,

    DEFENDANT-RESPONDENT.

---

       APPEAL from an order of the circuit court for Washington County: TODD K. MARTENS, Judge. *Reversed and cause remanded*.

       Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 DAVIS, J. This case involves a run-of-the-mill fact pattern—buyer purchases house, discovers defects, and sues seller—complicated by a thorny standing issue stemming from the buyers having purchased and owned the property as three related but separate legal entities. The question now is which, if any, party has standing to sue the original seller, where one party contracted to purchase the property and the second initially took title before conveying title to the third.

¶2 The circuit court determined that none of these parties had standing—meaning that these transactions effectively destroyed whatever claims might otherwise exist against the seller. We conclude otherwise. Although the issue is clouded by inartful pleadings and a confusing series of procedural machinations, we conclude that at least one of these parties has standing to pursue these claims. The question of which party can pursue which claims will depend, in part, on facts further developed under the legal frameworks set forth herein. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶3 Elias "Louis" Pagoudis (Louis); his wife, Hanna Pagoudis (Hanna); Sead Properties, LLC (Sead); and Kearns Management, LLC (Kearns) (collectively, Plaintiffs) appeal from an order dismissing, with prejudice, all claims against Amy Keidl (Amy) arising out of their purchase of residential real estate (the Property).

For the purpose of this appeal we accept as true the following facts from the amended complaint[1] and warranty deeds.[2]

¶4 Louis, through a standard offer to purchase, contracted to purchase the Property from Amy and Marcus Keidl (the Keidls). The offer to purchase states that it is between the Keidls and Louis "or assigns." In signing the offer, Louis relied on a real estate condition report signed by Amy.

---

[1] The pleadings, on which this case was resolved, are confusing to say the least. As pertinent here, after Plaintiffs filed suit, Amy filed a motion to dismiss. Amy filed extraneous documents—the warranty deeds at issue—with her motion. Plaintiffs responded to the motion and on the same day filed an amended complaint. One month later, the circuit court orally granted Amy's motion to dismiss and stated that its ruling applied to the amended complaint as well. Thereafter, Plaintiffs filed a motion for reconsideration, along with a second amended complaint. Plaintiffs filed other documents, including the offer to purchase, as part of that motion. These documents are not in the appellate record but were nonetheless included, improperly, in Plaintiffs' appendix. For purposes of this appeal, we will treat the amended complaint as the operative complaint. For the reasons discussed *infra* note 2, we will consider the content of the warranty deeds. Our discussion will not rely on the offer to purchase except to the extent that the parties, in their appellate briefing, have expressly agreed on its terms. We remind litigants that all documents relevant to their appeal must be in the record and cannot be introduced via appendix to the appellate briefing.

[2] Amy's motion to dismiss attached two recorded warranty deeds reflecting the transfer of the Property from her to Sead to Kearns. The authenticity of the deeds is undisputed. We see no basis for Plaintiffs' assertion that the circuit court committed reversible procedural error under WIS. STAT. § 802.06(2)(b) (2019-20) by considering the warranty deeds on the motion to dismiss, but without treating Amy's motion as one for summary judgment. *See* § 802.06(2)(b) ("If on a motion … to dismiss for failure of the pleading to state a claim upon which relief can be granted … matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [WIS. STAT.] § 802.08 …."). To the extent the circuit court considered the content of the deeds, the "incorporation-by-reference doctrine" applies, under which "a court may consider a document attached to a motion to dismiss … without converting the motion into one for summary judgment, if the document was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed." *See Soderlund v. Zibolski*, 2016 WI App 6, ¶¶37-38, 366 Wis. 2d 579, 874 N.W.2d 561 (2015). Even if that were not the case, Amy argues that the circuit court could take judicial notice of the warranty deeds, a point on which Plaintiffs do not take issue and therefore concede for purposes of appeal.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶5      Sead is an LLC that Louis owns and operates.  As Louis's assignee, per the offer to purchase, Sead purchased the Property from the Keidls using Louis's funds.  Several months later, Sead transferred title to the Property to Kearns, another related LLC which Louis purportedly formed as part of a reorganization of entities he owned.  As we understand the pleadings, Kearns currently owns the Property.

¶6      At some point after Sead's purchase, Louis discovered undisclosed defects in the Property.  This prompted Louis, Sead, and Kearns[3] to sue for breach of contract and various forms of common-law and statutory misrepresentation.

¶7      Amy moved to dismiss.  She argued that none of the parties had standing to sue:  Louis and Sead because they no longer owned the Property, and Kearns because it was not a party to the transaction in which the alleged fraud occurred.  The circuit court agreed, holding that Sead, as Louis's assignee, might have had standing to bring claims based on fraud in the real estate condition report, but "[t]hose representations do not follow the property through to subsequent owners" (i.e., Kearns).  Plaintiffs appeal this ruling.  We will set forth additional facts where relevant to the analysis that follows.

## DISCUSSION

¶8      This appeal comes to us from a dismissal on the pleadings, meaning that our review is de novo.  *See* ***McConkey v. Van Hollen***, 2010 WI 57, ¶¶12, 14 n.5, 326 Wis. 2d 1, 783 N.W.2d 855.  We address each issue using the same methodology as the circuit court, accepting as true all well-pleaded facts in the complaint and all reasonable inferences therefrom.  *See* ***id.***, ¶14 n.5; ***Data Key***

---

[3] Hanna is the fourth plaintiff, presumably because she is Louis's spouse and asserts an interest in marital property.  Our analysis as to Louis applies to Hanna.

4

*Partners v. Permira Advisers LLC*, 2014 WI 86, ¶¶17-19, 356 Wis. 2d 665, 849 N.W.2d 693.

¶9      The question before us is whether any of the plaintiffs has standing to sue.  Amy contends that the answer is no, for varying reasons.  Again, Amy argues that:  (1) Louis and Sead lack standing because they do not own the Property; and (2) Kearns, the current owner, lacks standing because it was not a party to the original transaction involving Amy's misrepresentations about the Property.

### General Principles of Standing

¶10      Threshold procedural arguments aside (*see supra* note 2), the sole issue on appeal is which plaintiff, if any, has the legal right to pursue relief against Amy for her alleged misstatements in the course of selling the Property.  The technical legal term here is "standing" to sue, but the test to determine standing is not particularly technical.  "Standing" has been defined as "a concept that restricts access to judicial remedies to those who have suffered some injury because of something that someone has either done or not done."  *Munger v. Seehafer*, 2016 WI App 89, ¶48, 372 Wis. 2d 749, 890 N.W.2d 22.  The concept, however, is not quite as broad as that might suggest—the plaintiff must still show that the injury suffered is one for which the law provides a remedy.  In addition to injury, "plaintiffs must show that they suffered or were threatened with an injury to an interest that is legally protectable."  *Marx v. Morris*, 2019 WI 34, ¶35, 386 Wis. 2d 122, 925 N.W.2d 112 (citation omitted).  Thus, a party has standing where (1) it has a personal interest (or "personal stake") in the controversy, (2) that interest has or will be injured or adversely affected, and (3) judicial policy calls for protecting that interest.  *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 2011 WI 36, ¶40, 333 Wis. 2d 402, 797 N.W.2d 789 (citation omitted).

¶11 The standing requirement, in essence, excludes would-be plaintiffs that have not suffered harm or whose alleged harm cannot be remedied within our legal system. Various policies and prudential considerations underlie this basic premise: we do not want courts deciding abstract legal questions, statutes invoked so as to protect interests outside their ambit, or plaintiffs asserting rights that are not their own. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982); *Foley-Ciccantelli*, 333 Wis. 2d 402, ¶¶130-34 (Prosser, J., concurring) (noting that Wisconsin's law of standing, which does not contain a jurisdictional component, reflects the prudential considerations articulated in *Valley Forge* and other United States Supreme Court cases, and citing to relevant Wisconsin case law). On the other hand, we generally want our courts to enforce legal agreements and redress legitimate claims of harm, and the doctrine of standing should not be employed as a "gotcha" so as to thwart these goals. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶38, 327 Wis. 2d 572, 786 N.W.2d 177 ("Courts construe standing broadly in favor of those seeking access.").

¶12 Our analysis is further informed by the closely related requirement that suits must be brought in the name of the real party in interest—that is, the party "who by substantive law has the right of action." *State ex rel. State Bar of Wis. v. Bonded Collections, Inc.*, 36 Wis. 2d 643, 651, 154 N.W.2d 250 (1967) (citation omitted); *see Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) (standing and real-party-in-interest requirements are "distinct" but "similar," in that both "are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him [or her] to be heard on the merits" (citation omitted)). And that law allows for flexibility. For example, a suit shall not be dismissed for failure to prosecute in the name of the real party in interest "until a reasonable time has been allowed after

objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." WIS. STAT. § 803.01(1). Too, representatives, guardians, and the like may sue on behalf of the real party in interest without joining that party. Sec. 803.01(2).

¶13 Here, Plaintiffs apparently sought to cover their bases by suing on behalf of all three parties with potential standing. And there seems little doubt that *one* of these parties—either Louis, who signed the offer to purchase and plans to live on the Property; or Sead, who bought the Property from Amy; or Kearns, the transferee from Sead—would ordinarily be able to seek redress if there were a material misrepresentation in a sale. In concluding otherwise, the circuit court adopted the premise that transfer of the Property operated to sever any *harm suffered* from the *legal right* to obtain redress for that harm. We will address that premise below. Our analysis is further complicated by the existence of multiple causes of action that may or may not be owned by the same plaintiffs. We will endeavor to address standing as it relates to each category of plaintiff and each type of claim.

*Louis May Have Standing to Sue*

¶14 As we will discuss below, standing is premised on injuries suffered by those plaintiffs actually purchasing or owning the Property. Louis entered into the offer to purchase, but he did so apparently on Sead's behalf. It is difficult to decide this point definitively from the pleadings, but the parties appear to agree that Sead was Louis's assignee and that *Sead* was the purchaser. If this is the case, then Sead stepped into Louis's shoes and assumed all of Louis's rights in the transaction. *See **Peterson v. Johnson***, 56 Wis. 2d 145, 149, 201 N.W.2d 507 (1972) ("Once the assignment [of a land contract] is completed the assignee steps into the shoes of the buyer." (citation omitted)). Based on the amended complaint and warranty deeds,

therefore, it is not evident that Louis has any rights distinct and separate from those of the LLCs and stemming from the original contract or the purchase of the Property, at least insofar as these claims are concerned.[4]  Because the amended complaint is somewhat confusing on this point, however, we are hesitant to determine the exact role that Louis played in the purchase and conveyance of the Property, *vis-a-vis* the other plaintiffs.

¶15     This is a factual issue that can and should be resolved definitively on remand.  If Louis's only role in these transactions was contracting on behalf of his assignee, Sead, then he has no standing in his own right and is not a proper plaintiff.

---

[4] Although an LLC member may, in some circumstances, be the proper party to sue in the name of the LLC, those circumstances do not appear to exist here.  WISCONSIN STAT. § 183.0305 states:

> **Parties to actions.**  A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company, except if any of the following situations exists:
>
> **(1)**  The object of the proceeding is to enforce a member's right against or liability to the limited liability company.
>
> **(2)**  The action is brought by the member under [WIS. STAT. §] 183.1101.

Section 183.1101 then provides the procedure in which an LLC member can sue on behalf of an LLC and states that, where that procedure is followed, "the complaint shall describe with particularity the authorization of the member to bring the action and the determination of the authorization." *See* § 183.1101(3).  At a minimum, if Louis intended to bring this suit personally but in the name of either Sead or Kearns, then the complaint should not have named those LLCs as plaintiffs suing on their own behalf.  Louis and the LLCs he controls are separate legal entities and cannot simultaneously sue on a cause of action that only one of them owns. *See Filighera v. Starnet Ins. Co.*, No. 21-cv-208-wmc, 2021 WL 1171561, at *1-2 (W.D. Wis. Mar. 29, 2021) (requiring individual plaintiff who sued "doing business as" an LLC to indicate capacity in which suit is being brought; "an LLC is a separate business entity created by statute" and "[a]n individual cannot do business as a separate legal entity").

To the extent Plaintiffs meant to assert other theories under which Louis might have standing, this can be addressed on remand, with reference to the legal principles to which we now turn.[5]

*Sead Did Not Lose Standing Solely Because the
Property Was Transferred to Kearns*

¶16 We next consider whether Sead has standing to sue. The circuit court dismissed Sead as a plaintiff because it no longer owned the Property. As may be evident from the above discussion, however, we believe such dismissal represents an unduly rigid view of the law on standing. The transfer to Kearns did not necessarily destroy Sead's "personal stake" or right to be compensated for harm suffered. *See **Foley-Ciccantelli***, 333 Wis. 2d 402, ¶40 (citation omitted).

¶17 We start with a basic premise: if Amy's false statements caused Sead economic harm, we have no reason to conclude that this harm was in any way abated *solely* because Sead later conveyed the Property to Kearns. An ironclad rule, that a

---

[5] In addressing the LLC standing issue, we have considered the impact of ***Marx v. Morris***, 2019 WI 34, ¶¶37-46, 386 Wis. 2d 122, 925 N.W.2d 112, in which LLC members were permitted to sue other LLC members (and, since the members were themselves LLCs, their members) for injury to the LLC. We do not construe ***Marx*** as controlling on the issue before us. First, we do not view ***Marx*** as establishing unfettered member standing to sue either in the individual capacity or on behalf of an LLC *whenever* an LLC is injured, as such an interpretation would ignore the plain language of WIS. STAT. § 183.0305, governing the standing of LLC members. *See supra* note 4. Rather, ***Marx***—a dispute in which one member claimed that another had engaged in self-dealing involving the LLC—appears to establish a rule to the effect that an LLC member can bring such an action directly, without the need for a derivative proceeding, on the theory that where an LLC suffers injury at the hands of a member or manager, other members can sue for injury to their individual interest in the LLC. Importantly, for purposes of this case, any right of an LLC member to sue in that member's own name (based on injury to the member by virtue of the member's LLC interest) still requires a determination of whether the *LLC*, in fact, has a legally compensable injury. In other words, LLCs are distinct legal entities, and we still must determine the substantive issue of who suffered the injury giving rise to the cause of action and whether (as the circuit court found here) that cause of action is subsequently lost by virtue of a transfer to a separate legal entity. *See **Marx***, 386 Wis. 2d 122, ¶31 ("[I]f a member of an LLC transfers real estate to the LLC in exchange for an ownership interest in the LLC, that member no longer has any ownership interest in the real estate. Instead, the LLC owns the real estate, and the member owns personal property in the form of an ownership interest in the LLC.").

party loses standing whenever it divests itself of the property interest forming the basis for a claim, would be untenable and might produce absurd results. Under such a rule, for example, a person in a car accident could not sell the damaged vehicle for scrap without destroying his or her claims against the party that caused the accident. Or, to employ an analogy closer to this case, a parent who purchased and conveyed a house to his or her child as a gift would, by virtue of the gift transfer, destroy any claim against the seller for undisclosed defects. This is not the law: we are unaware of any authority holding that a party seeking damages for diminished property value or cost of repairs, whether under contract or tort theories or both, automatically loses standing whenever it conveys the property at issue.

¶18 Although it appears that no Wisconsin case has addressed this issue, persuasive authority supports our conclusion. For example, in ***Vaughn v. Dame Construction Co.***, 223 Cal. App. 3d 144, 146 (Cal. Ct. App. 1990), a condominium owner brought claims against a contractor based on alleged construction defects. After the owner filed suit, she sold the property. ***Id.*** The contractor moved to dismiss for lack of standing, and the circuit court granted the motion. ***Id.*** The appellate court reversed. ***Id.*** at 149. In doing so, the court noted that the cause of action for defective construction did not "run with the land" but, rather, was owned by whomever owned the property, and thereby suffered injury, when the defects occurred:

> The cause of action for damages as a result of injury to property, which was fully vested in plaintiff at the time of the injury, is personal property—not real property. "A thing in action is a right to recover money or other personal property by a judicial proceeding[."] The right to recover damages for injury to property, being personal property, may be assigned or transferred. "A thing in action, arising out of the violation of a right of property ... may be transferred by the owner[."] There is no authority, however, for the proposition that the transfer of the real property automatically transfers plaintiff's personal cause of action.

> To the contrary, a party can transfer or assign the right to recover for damages to the property without also conveying title to the property. Similarly, in this case, plaintiff had the right to convey the real property but retain her cause of action for damages from defendant's defective construction.

*Id.* at 148-49 (citations and footnotes omitted).

¶19 The principles in *Vaughn* have been followed in analogous cases, in both the Seventh Circuit and Wisconsin, involving the right to recover on a property insurance policy following damage to the property. *See, e.g.*, *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 764-65 (7th Cir. 2013) (plaintiff, which had an insurable interest in property when the policy was issued and at the time of the loss, did not lose its claim for replacement cost proceeds when it later sold the damaged property in its unrepaired state); *Kolehouse v. Connecticut Fire Ins. Co.*, 267 Wis. 120, 125-26, 128, 65 N.W.2d 28 (1954) (lender, which held a conditional sales contract for a tractor retained the right to proceeds under a collision insurance policy, even though the lender did not conduct a proper resale upon foreclosure of the damaged tractor, because the "right to recover upon the collision policy was determinable as of the date of the collision loss unaffected by any of the subsequent events which occurred").

¶20 These cases stand for the principle that a cause of action concerning property, once accrued, is not lost simply because the property is conveyed. That principle is applicable here. We therefore turn to whether the amended complaint, liberally construed, alleges that Sead suffered harm, and of what type.

*Sead Has Standing to Pursue Claims to the Extent It Can Show That It Suffered Legally Compensable Harm*

¶21 As relevant to this appeal, the amended complaint alleges four claims: (1) breach of contract based on breach of express warranty; (2) false advertising

11

under WIS. STAT. § 100.18; (3) misrepresentation under WIS. STAT. § 895.446, providing a civil remedy for a violation of WIS. STAT. § 943.20(1)(d) (theft-by-fraud); and (4) strict-responsibility misrepresentation. "The elements of an express warranty are: (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance by the buyer"; here, Plaintiffs allege breach by virtue of Amy's false representations in the real estate condition report. *See Malzewski v. Rapkin*, 2006 WI App 183, ¶14, 296 Wis. 2d 98, 723 N.W.2d 156. Generally speaking, Plaintiffs' other three claims, sounding in tort, have in common that the seller made an untrue statement that caused the buyer to sustain some pecuniary or economic loss.[6] *Id.*, ¶¶19, 21, 23.

¶22 For purposes of determining Sead's standing to sue on these claims, the question comes back to the elements discussed previously: does Sead have a personal interest in this controversy that was harmed, and does the law provide a legal remedy for that harm? *See Foley-Ciccantelli*, 333 Wis. 2d 402, ¶40. At this juncture, we cannot rule out the possibility that the answer is yes. Again, the fact that a party does not currently own property that is the subject of a claim does not necessarily mean that the party did not suffer a legally compensable injury in connection with acquiring that property. An obvious example would be where a home buyer discovered undisclosed defects after purchase and, for that reason, was forced to sell the property at a discount (or in the auto accident case previously

---

[6] We recognize that the application of the economic loss doctrine may impact the viability of the strict-responsibility misrepresentation claim and any other common-law tort claims that may be asserted on remand; this argument was the subject of a separate motion below by another defendant. *See Below v. Norton*, 2008 WI 77, 310 Wis. 2d 713, 751 N.W.2d 351. Because we analyze only those arguments relating to Amy's appeal, concerning standing, we do not decide this issue or any other merits-based arguments concerning the viability of the claims.

referenced, for scrap). In such a case, the injury to the buyer would be apparent, and the buyer should not be barred from pursuing relief against the seller.

¶23 But even where a defect is not discovered until after the buyer divests itself of the property, we cannot say with certainty that the buyer did not suffer a compensable injury. Suppose a buyer conveyed property to a third party under an agreement to indemnify the third party for any defects in the property. If the third party later discovered defects and sued, the buyer would surely have a claim against the original seller, notwithstanding the fact that it no longer owned the property. On the other hand, there certainly are circumstances in which standing might *not* exist following the buyer's divestiture. If, in our example, the buyer, unaware of hidden defects, sold the property for full value and without providing indemnification, it would be hard-pressed to later claim any sort of *injury*—in which case it would have no standing (although in that scenario, the *subsequent* buyer may have standing, under the principles discussed in the next section).

¶24 Of course, we can ascertain from the pleadings that here there was no conveyance from Sead to an independent third-party buyer. There was only a conveyance to a related party—another LLC owned by Louis. That fact does not necessarily tell us, however, which of these parties suffered a compensable injury. If Sead conveyed the Property for no consideration (as seems likely), any loss Sead suffered by virtue of Amy's misrepresentations was not eliminated by the conveyance. Sead would be in the position of the parent, in our other previous example, who purchased and then gifted a house to his or her child. In such case, it is the parent who was deprived of a bargained-for property interest and who should retain the right to seek recompense for that deprivation, regardless of what he or she subsequently did with the property.

13

¶25    Before this issue can be resolved, more facts will need to be determined than are contained in this record.  At this stage, we can only say that the lack of a current property interest is not enough to rule out the possibility that Sead can sue for losses incurred as a result of undisclosed or concealed defects.  If Sead can show no losses—say, to borrow from one of our previous scenarios, if Sead realized the full value of the Property upon its conveyance to Kearns—then the question arises as to whether *Kearns* has a compensable claim against Amy for any loss *it* may have suffered.  We turn to that question now.

*Kearns May Have Standing to Sue in Tort If It Shows That Amy Could Have Reasonably Expected That It (Or One in Its Class) Would Rely on Her Misrepresentations*

¶26    As noted above, in some scenarios a buyer that subsequently conveys property does not have standing to sue the seller—not because of the conveyance per se, but because the conveyance results in that buyer's not suffering any compensable injury.  It is easy to imagine this scenario arising regularly in disputes of the type here.  Where a seller commits fraud on a buyer, the property might pass through any number of hands before some unfortunate soul learns of a problem that should have been disclosed several transactions back.  In making a claim against the original seller, the latter buyer faces the legal challenge that the fraud was directed only to the original buyer.  The circuit court determined that this fact was fatal to any cause of action by the subsequent buyer, Kearns, stating, "Kearns, as successful grantee from Sead[,] would be entitled to rely … on any representations made by Sead but [it] would not be entitled to rely on representations made by the previous owner."

¶27    The circuit court was surely correct in regards to any contract claim.  Generally speaking, a subsequent buyer has no right to seek a contractual remedy

against a remote seller, since only parties to the agreement have standing.[7]  *See Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.*, 231 Wis. 2d 404, 409, 605 N.W.2d 620 (Ct. App. 1999).  A different analysis, however, applies to tort claims.  Under the RESTATEMENT (SECOND) OF TORTS § 533 (AM. L. INST. 1977),

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Thus, under some circumstances, a seller may be liable to a third party for *indirect misrepresentations* causing pecuniary loss.

¶28    We recognize at the outset that RESTATEMENT (SECOND) OF TORTS § 533 concerns fraudulent misrepresentation.  Thus, § 533 on its face, and the third-party liability rule more generally, do not apply to Plaintiffs' strict-responsibility misrepresentation claim.[8]  This limitation is made explicit by RESTATEMENT (SECOND) OF TORTS § 552C and particularly comment 1(d), which notes that liability for misrepresentation that is neither fraudulent nor negligent "is limited to the immediate parties ….  [The rule] does not apply in favor of a third person who

---

[7] An exception would be where contract claims were assigned or where the third party was shown to be a third-party beneficiary of the agreement.  Neither circumstance was pleaded or argued in this case, so we do not consider those possibilities.

[8] A strict-responsibility misrepresentation claim does not require proof of scienter on the part of the defendant, but only that the defendant made an untrue representation.  To succeed on this claim, the plaintiff must show that the defendant made an untrue representation of fact, based on personal knowledge or under circumstances in which the defendant should have known the truth of the statement; that the defendant had an economic interest in the transaction; and that the plaintiff believed that the representation was true and justifiably relied on it.  *Malzewski v. Rapkin*, 2006 WI App 183, ¶19, 296 Wis. 2d 98, 723 N.W.2d 156.

is not a party to the transaction, even though he acts according to expectations in taking action or refraining from it in reliance upon the misrepresentation." Sec. 552C cmt. 1(d).  This Court, in fact, adopted such a rule in *Grube v. Daun*, 173 Wis. 2d 30, 69-71, 496 N.W.2d 106 (Ct. App. 1992) (relying in part on § 552C so as not to extend liability to former property owner under strict-responsibility misrepresentation theory), *overruled on other grounds by* *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶75, 369 Wis. 2d 547, 881 N.W.2d 309.

¶29     That leaves two potential causes of action that might accrue to Kearns, as a third party:  theft-by-fraud under WIS. STAT. §§ 895.446 and 943.20(1)(d), and false advertising under WIS. STAT. § 100.18.  Section 895.446 provides a civil remedy for the violation of § 943.20(1)(d), the criminal theft statute, which in turn penalizes "[o]btain[ing] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made."  *Id.* Nothing in the statutory language precludes application of the third-party liability rule discussed in RESTATEMENT (SECOND) OF TORTS § 533.  To the contrary, the statute provides a civil cause of action to "any person who suffers damage or loss by reason of intentional conduct" that violates the statute.  *See* § 895.446(1). Moreover, we have recognized that "[t]he effect of §§ 895.[446] and 943.20(1)(d) is simply to provide a specific remedy for certain instances of the tort of fraud in the inducement."  *Malzewski*, 296 Wis. 2d 98, ¶22 (citation omitted).[9]  "Liability for fraud in the inducement requires that the five elements of an intentional misrepresentation claim for relief … are satisfied, and in addition, that the misrepresentation has occurred before contract formation."  *Id.* (citation omitted).

---

[9] *Malzewski* cites to WIS. STAT. § 895.80 (2001-02), which has been renumbered to WIS. STAT § 895.446, but is, for our purposes, identical.  *See* 2005 Wis. Act 155, § 70.

Thus, the third-party liability rule discussed in § 533, explicitly applicable to fraudulent misrepresentation, would seem to squarely apply to theft-by-fraud claims as well.

¶30    A similar analysis applies to WIS. STAT. § 100.18(1).  That statute states:

> No person … with intent to sell … real estate … to the public … or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase … of any real estate … shall make … [a] statement or representation of any kind to the public relating to such purchase [or] sale … or to the terms or conditions thereof, which … statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

*Id.*  The statutory term "the public" does not require that the seller make deceptive statements to a large audience; the term may refer to a small number, or only one, person.  *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶61, 389 Wis. 2d 669, 937 N.W.2d 37.  And significantly, for standing purposes, the statute provides a cause of action to "[a]ny person suffering pecuniary loss" because of such violation.  *See* § 100.18(11)(b)2.  Thus, a § 100.18 claim simply requires proof that the defendant made an untrue, deceptive, or misleading representation to the public with the intent to induce an obligation, and that this representation caused the plaintiff a pecuniary loss.  *K&S Tool & Die Corp. v Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶19, 301 Wis. 2d 109, 732 N.W.2d 792.  We are unaware of any authority holding that such claims can only be brought by parties to the transaction in which the representation

is made;[10] nor does the statutory language exclude third-party liability. Applying the policies behind RESTATEMENT (SECOND) OF TORTS § 533 in conjunction with the statutory language, we conclude that § 100.18 applies where a seller makes a misrepresentation to the public, intending or having reason to expect that the misrepresentation will be conveyed to, and induce an obligation by, a party with whom the seller does not directly deal, causing that party to suffer a pecuniary loss.[11]

¶31     We note that although no Wisconsin decision has expressly adopted RESTATEMENT (SECOND) OF TORTS § 533, our court has cited to it with seeming approval. *See, e.g.*, ***State v. Timblin***, 2002 WI App 304, ¶31, 259 Wis. 2d 299, 657 N.W.2d 89 ("The RESTATEMENT (SECOND) OF TORTS provides for civil liability for misrepresentation where it is foreseeable and intended that a fraudulent

---

[10] In ***Grice Engineering, Inc. v. JG Innovations, Inc.***, 691 F. Supp. 2d 915, 922-23 (W.D. Wis. 2010), the Western District of Wisconsin determined that a business could not bring a WIS. STAT. § 100.18 action against a competitor based on misrepresentations the competitor made to the public (the plaintiff's argument being that such misrepresentations led the misinformed public to buy from the competitor, rather than the plaintiff). The court relied on ***Novell v. Migliaccio***, 2008 WI 44, ¶¶44-53, 309 Wis. 2d 132, 749 N.W.2d 544, for the proposition that a plaintiff seeking to establish that the representation caused pecuniary loss must show a form of reliance, i.e., that "the representation … *materially induce[d] the plaintiff's decision to act*." ***Grice***, 691 F. Supp. 2d at 923 (citing ***Novell***, 309 Wis. 2d 132, ¶51). Although a plaintiff does not have to show that it *reasonably* relied on the defendant's misrepresentation, "the reasonableness of a plaintiff's reliance may be relevant in considering whether the representations materially induced the plaintiff's pecuniary loss." ***Novell***, 309 Wis. 2d 132, ¶47 (citation omitted). The ***Grice*** court was "persuaded by this reasoning, which is supported by the purpose of § 100.18" (to protect consumers); it noted that "Wisconsin law contains other doctrines, such as tortious interference with contract, that are designed specifically to protect one vendor from the unlawful actions of a competitor." ***Grice***, 691 F. Supp. 2d at 923 (citation omitted). Thus, the ***Grice*** court's reasoning was based in large part on the factual circumstances of that case, driving the conclusion that a competitor's misrepresentations to the public cannot reasonably be said to materially induce another business to do anything at all. Such a rationale is quite removed from this case, which involves misrepresentations to a related party with the same principal, and in which RESTATEMENT (SECOND) OF TORTS § 533 (AM. L. INST. 1977) would seem as applicable as in cases of fraudulent misrepresentation.

[11] It is unclear from the record whether the second amended complaint, filed subsequent to the operative complaint in this appeal, will control on remand. That complaint alleges intentional misrepresentation, for which RESTATEMENT (SECOND) OF TORTS § 533 applies. The analysis in this section thus applies to that claim, to the extent it is otherwise deemed viable.

misrepresentation will be repeated to third parties and acted upon by them ….” (footnote omitted)). Moreover, courts in other states have applied this section in circumstances similar to those here. For example, in *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 603-04 (Cal. Ct. App. 1995), owners of residential property sued a prior owner several sales removed, alleging that the defendant's misrepresentations to the immediate purchaser harmed them as subsequent owners. Overruling a trial court demurrer, the California court of appeals cited to § 533 in extending potential liability to the defendant. *Geernaert*, 31 Cal. App. 4th at 604-09. Citing to an earlier California case involving a developer who had concealed defects, the court stated, “[I]t would be anomalous if liability for damages resulting from fraudulent concealment were to vanish simply because of the fortuitous event of an intervening resale.” *Id.* at 607 (quoting *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 192 (Cal. Ct. App. 1982)).

¶32    To similar effect is *Rhee v. Highland Development Corp.*, 958 A.2d 385, 387 (Md. Ct. Spec. App. 2008), wherein the Maryland Court of Appeals considered whether a property developer could be liable to subsequent purchasers for fraudulently concealing, to the immediate purchaser, that the property was built on an abandoned cemetery. In determining that liability might exist, the court discussed the public-policy rationale underlying RESTATEMENT (SECOND) OF TORTS § 533:

> The more ingenious the deception by concealment, the more likely it is that the defect will be passed unknowingly from one property purchaser to the next. If the concealment keeps the seller/developer's immediate purchasers in the dark about the existence of the defect, that is due to his proficiency in perpetrating the fraud. He should not be protected from liability for fraud because the defect he has concealed does not become manifest until after the property has transferred hands.

19

***Rhee***, 958 A.2d at 397.

¶33 On this record, the rule set forth in RESTATEMENT (SECOND) OF TORTS § 533 seems, if anything, more readily applicable than in either ***Geernaert*** or ***Rhee***. Here, there was no remote buyer, just a short series of related-party transfers between Louis and the two LLCs he owned. It seems inescapable that Amy would expect that any misrepresentations made to Louis personally were made to those entities which he owned. Further supporting our assumption on this point is the offer to purchase itself, which states that it is between Amy and *either* Louis "*or* assigns." (Emphasis added.) Nonetheless, because this appeal arrives to us on a motion to dismiss, we do not foreclose Amy's raising an argument as to why she could *not* reasonably have intended reliance by a related party, such as Kearns. At this stage, we simply note that the pleadings are sufficient to allege standing on behalf of Kearns to assert the statutory claims that have been pled in this case, should it be determined that Kearns, rather than Sead, is the party who suffered injury.

*Proceedings on Remand*

¶34 To summarize the above discussion, the related-party transactions in this case did not act to destroy standing to sue, at least not for all of the parties on all of the claims pled. Instead, further factual development is necessary to flesh out which plaintiffs possess which claims, and thus standing. On the current record, there are, to be sure, some limitations to that inquiry since only Sead (or possibly Louis) owns the breach of contract claim and only Sead, as the party to the transaction with Amy, can raise a strict-responsibility misrepresentation claim. Thus, so long as Sead can show a compensable injury, it has standing to raise all four claims. In the event Sead cannot show injury, then Kearns would have potential standing on the theft-by-fraud and WIS. STAT. § 100.18 false advertising claims. We

20

also cannot, at this stage, rule out Louis as a potential plaintiff, given the vagueness of the pleadings.

¶35 On this record, we cannot further determine which plaintiff can or should sue for which damages. We emphasize one point, however, which we have not yet raised explicitly: under no circumstance should this decision be construed as enabling double recovery. This is the driving principle behind the real-party-in-interest requirement. *See* ***Bonded Collections, Inc.***, 36 Wis. 2d at 651 ("The purpose of the real-party-in-interest statute is to prevent a multiplicity of suits, to make sure that a defendant can assert his [or her] defenses when sued upon an assigned claim, to assure that a judgment will completely settle the claim, and to make it possible to discharge the debt by paying the assignee with no vestigial right of action remaining in the assignor."). Thus, if Sead has standing to pursue any claim in full, this necessarily forecloses Kearns' bringing that claim (and vice versa). Of course, it is possible that more than one plaintiff incurred discrete damages under the same theory of liability; say, if Sead transferred the Property at a discount because of a defect it discovered, and Kearns discovered a different defect following conveyance. But in that event, Sead and Kearns would be suing for separate harms.

¶36 Although hardly a model of clarity,[12] the amended complaint sufficiently puts into play the possibility of recovery by Louis, Sead, Kearns, or some combination of the three, on one or more viable causes of action.

---

[12] We agree with the circuit court that the drafting of the pertinent pleadings was "quite sloppy"; this failing undoubtedly contributed to the circuit court's difficulty in analyzing the standing question and has certainly made that effort more difficult for this court. We remind litigants that care should be taken at the pleadings stage to clearly address the legal basis for each party's right to sue; this can save parties and courts considerable time and effort in addressing these points.

Consequently, when we construe the amended complaint liberally—as we must—we can only conclude that Sead, and potentially Louis and Kearns, have standing. In that regard, we cannot help noting that this case could be greatly simplified on remand by a series of additional assignments, so that a single party owns these claims. This would eliminate any further need to parse out which party can sue for which injuries. *See Chimekas v. Marvin*, 25 Wis. 2d 630, 633, 131 N.W.2d 297 (1964) ("[A] cause of action for deceit in inducing a conveyance of real estate ... is assignable.").[13] We reverse the circuit court's order dismissing the amended complaint and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

---

[13] *Chimekas v. Marvin*, 25 Wis. 2d 630, 131 N.W.2d 297 (1964), concerns the assignment of tort claims; contract claims are certainly assignable as well. We assume here, but without deciding the point, that all of the Plaintiffs' claims are assignable and that there are no other barriers to the assignment of claims on remand. *See Yorgan v. Durkin*, 2006 WI 60, ¶12, 290 Wis. 2d 671, 715 N.W.2d 160 (contract claims are generally more "easily assignable" than tort claims).